**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

TIFFANY ALEXANDER, ET AL. PLAINTIFFS

vs. Civil Action No. 3:04-cv-614 HTW-LRA

CITY OF JACKSON, MISSISSIPPI, ET AL. DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

## I. Introduction

Before the court is defendant City of Jackson's ("the City") renewed motion for judgment as a matter of law filed pursuant to Fed. R. Civ. P. 50(b)[1] or, in the alternative, for a remittitur, or for a new trial pursuant to Fed. R. Civ. P. 59(a),[2] **[docket # 179]**. This lawsuit was tried before a Judge and Jury on May 10-31, 2007, with the jury returning a verdict for all four (4) plaintiffs against the defendants. Now, in the aftermath of that verdict, the defendants contend that they should be granted a new trial because the jury's verdict was occasioned improperly by passion or prejudice and because of inappropriate conduct by plaintiffs' attorney. Plaintiffs oppose the motion in all of its particulars. Nevertheless, having carefully reviewed the briefs of the parties, the relevant law and the case file as a whole, and having heard the oral arguments of

[1] Fed. R. Civ. P. 50(b) states, in pertinent part, "no later than 10 days after the entry of judgment [...] the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under [Fed. R. Civ. P.] 59."

[2] Fed. R. Civ. P. 59(a) states, in pertinent part, that "a new trial may be granted to all or any of the parties and on all or part of the issues [...] in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States[.]"

counsel, the court finds that the City's motion for new trial is well taken.

**Arguments**

The City argues that it is entitled to a new trial because the jury's verdict was based on passion and prejudice and that such passion and prejudice clearly obstructed the jury's charged duty to consider fairly all of the evidence. The City attributes the jury's malfeasance to the conduct of plaintiffs' attorneys. During the trial, says the City, plaintiffs' counsel repeatedly and blatantly violated various procedural rules of court, to wit: invoking "Golden Rule" arguments during closing arguments; referencing non-admitted witness statements during closing arguments; attempting to elicit testimony from witnesses regarding non-admitted documents; seeking to have witnesses read from items marked for identification only – even after being warned by the court not to make such attempts; repeatedly questioning the court's evidentiary rulings in the presence of the jury; arguing with witnesses on the stand – again, even after the court warned counsel against doing so; and questioning defense witnesses in an inflammatory fashion without any factual basis for asking the questions.

Plaintiffs oppose the motion. This case featured factual disputes, say plaintiffs, which were ripe for resolution by a jury. The jury, continue plaintiffs, heard and properly weighed all of the evidence. The conduct of plaintiffs' attorneys cited by the City of Jackson, say plaintiffs, had no effect upon the jury's verdict.

**Background**

This civil lawsuit was filed against the defendants City of Jackson, Mississippi; Chief Raymond McNulty; Chief Luther Thompson; Captain Larry Smith; Chief Michael

Sterling; Captain Howard Taylor; and Captain Herman Watley by plaintiffs Tiffany Alexander; Sandra Hawkins; Jacqueline Moore; and Stacy Prophet. In their lawsuit, plaintiffs all firefighters with the City of Jackson, Mississippi, Fire Department, allege that they have been the victims of sexual harassment as outlawed by Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e *et seq*.

On May 1, 2007, this court empaneled a jury which heard testimony over several weeks. After deliberating, the jury found for the plaintiffs and awarded to them damages as follows:

**Tiffany Alexander**

| | |
|---|---|
| 28,561.80 | Past physical harm to plaintiff, including ill health, physical pain, disability, disfigurement |
| 28,561.80 | Future physical harm that plaintiff is reasonably certain to experience in the future |
| 28,561.80 | Past emotional and mental harm |
| 28,561.80 | Future emotional and mental harm |
| 7,891.39 | Reasonable value of medical, psychological, hospital, nursing expenses, and medical supply bills that plaintiff reasonably needed and actually obtained |
| 37,861.41 | Lost wages, salary and profits relative to leave |

Total: 160,00.00

**Sandra Hawkins**

| | |
|---|---|
| 25,000.00 | Past physical harm to plaintiff, including ill health, physical pain, disability, disfigurement |
| 25,000.00 | Future physical harm that plaintiff is reasonably certain to experience in the future |

| | |
|---|---|
| 25,000.00 | Past emotional and mental harm |
| 25,000.00 | Future emotional and mental harm |
| 1,613.91 | Reasonable value of medical, psychological, hospital, nursing expenses, and medical supply bills that plaintiff reasonably needed and actually obtained |
| 58,386.09 | Lost wages, salary and profits relative to leave |

Total: 160,000.00

**Jacqueline Moore**

| | |
|---|---|
| 25,084.26 | Past physical harm to plaintiff, including ill health, physical pain, disability, disfigurement |
| 25,084.26 | Future physical harm that plaintiff is reasonably certain to experience in the future |
| 25,084.26 | Past emotional and mental harm |
| 25,084.26 | Future emotional and mental harm |
| 0 | Reasonable value of medical, psychological, hospital, nursing expenses, and medical supply bills that plaintiff reasonably needed and actually obtained |
| 27,662.96 | Lost wages, salary and profits relative to leave |

Total: 128,000.00

**Stacy Prophet**

| | |
|---|---|
| 30,936.48 | Past physical harm to plaintiff, including ill health, physical pain, disability, disfigurement |
| 30,936.48 | Future physical harm that plaintiff is reasonably certain to experience in the future |
| 30,936.48 | Past emotional and mental harm |

| | |
|---|---|
| 30,936.48 | Future emotional and mental harm |
| 2,735.92 | Reasonable value of medical, psychological, hospital, nursing expenses, and medical supply bills that plaintiff reasonably needed and actually obtained |
| 83,518.16 | Lost wages, salary and profits relative to leave |

Total: 210,000.00

**Applicable Law**

Fed. R. Civ. P. 59(a) grants a trial court the prerogative to order a new trial based on its assessment of the fairness of the trial and the reliability of the jury's verdict. "A new trial, rather than a remittitur, is the appropriate remedy when a jury award results from passion and prejudice." *Whitehead v. Kmart Corp.*, 163 F.3d 265, 275 (5th Cir. 1998) (citing *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 781 (5th Cir. 1983)); *Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 683 (5th Cir. 1986) (citing *Westbrook v. Gen. Tire. & Rubber Co.*, 754 F.2d 1233, 1241 (5th Cir. 1985)). The trial court may grant a new trial upon a welter of circumstances: where the verdict is against the great weight of the evidence, *see Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 540 (1958), *overruled on other grounds*, *Hanna v. Plumer*, 380 U.S. 460 (1965); where the damages awarded are excessive; where the trial was unfair; or where prejudicial error was committed. *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1139-40 (5th Cir. 1991) (citing *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). In ruling upon a Rule 59(a) motion, the court must view the evidence in the light most favorable to the jury verdict. *See Cobb v. Rowan Co., Inc.*, 919 F.2d 1089, 1090 (5th Cir. 1991). The district court, therefore, abuses its discretion by denying a new trial only when there

is an "absolute absence of evidence to support the jury's verdict." *Id.* (citing *Irvan v. Frozen Food Express, Inc.*, 809 F.2d 1165, 1166 (5th Cir. 1987)); *see also Stokes v. Georgia-Pacific Corp.*, 894 F.2d 764, 769 (5th Cir. 1990). Thus, the district court has "sound discretion" to grant or deny new trial motions. *Hidden Oaks Ltd. V. City of Austin*, 138 F.3d 1036, 1046 (5th Cir. 1998); *Bernard v. IBP, Inc.*, 154 F.3d 259, 264 (5th Cir. 1998).

"The propriety of an argument is a matter of federal trial procedure[.]" *Whitehead*, 163 F.3d at 275 (citing *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525 (1958)). "No doubt, final arguments must be forceful." *Whitehead*, 163 F.3d at 275 (dictum). "And, generally, counsel are allowed a 'reasonable latitude' in making them." *Id.* (citing *Edwards v. Sears, Roebuck, & Co.*, 512 F.2d 276, 283 (5th Cir. 1975)). Thus, "when a final argument is challenged for impropriety or error", a court must review the entire argument "within the context of the court's rulings on objection, the jury charge, and any corrective measures applied by the trial court." *Whitehead*, 163 F.3d at 275-76. To grant a Rule 59(a) motion for new trial, the court needs not find that each statement, taken individually, was so improper as to warrant a new trial. *See id.* at 278. Instead, the court must determine whether, taken as a whole, the allegedly improper comments prejudiced the jury's findings. *See id.*

"[The Fifth Circuit] has forbidden plaintiff's counsel from explicitly requesting a jury to place itself in the plaintiff's position and do unto him as they would have them do unto them." *Id.* at 278 (citing *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983)). The *Whitehead* court held that the plaintiffs' counsel improperly invoked a

"Golden Rule" argument during closing arguments, contravening Fifth Circuit precedent. *Whitehead*, 163 F.3d at 278. In *Whitehead*, a woman and her 14-year-old daughter sued a department store after two assailants abducted and robbed them in the store's unattended parking lot. *Id.* at 268. After being abducted, the assailants took turns sodomizing the adult plaintiff outside her vehicle while the other held the daughter inside the vehicle. *Id.* At trial, counsel for the plaintiffs made the following remarks to jurors during closing arguments:

> The incident took approximately two hours from when they were abducted to when they were released. And I calculated it, and that's 7,200 seconds. And I want for you to just for a couple of seconds to see–when I say start, that's ten seconds. Ten seconds.
>
> *And can you imagine how it would feel to have a knife in your side or a knife on your leg or a pistol at your neck for ten seconds[?]*

*Id.* at 278. The court held that "even assuming he was not explicitly invoking the Golden Rule, counsel was clearly inviting the members of the jury to put themselves in the place of the plaintiffs when deciding damages." *Id.*

**Holding**

This court is persuaded to set aside the jury's verdict because of several occurrences, all of which are significant and certainly all of which under the totality of the circumstances sturdily campaign for a new trial.

First of all, one does not need a magnifying glass when examining the jury's verdict on damages to see that the jury refused to examine each category of damages under the credible evidence. Relative to Tiffany Alexander, the jury awarded $28,561.80 for the category of Past Physical Harm, as well as for the category of Future

Physical Harm, as well as for the category of Past Emotional and Mental Harm, and as well as for the category of Future Emotional and Mental Harm. Down to the exact penny, the jury provided this same sum for these four different categories.

The jury found similarly for Sandra Hawkins. With her, the jury settled on $25,000.00 as reasonable damages under the preponderance of the evidence for each of the four categories of Past Physical Harm, Future Physical Harm, Past Emotional and Mental Harm, and Future Emotional and Mental Harm.

The verdict on damages for Jacqueline Moore reflects more of the same. The jury awarded $25,084.26 for the four categories already named.

The Stacy Prophet verdict on damages awarded $30,936.48 for all four of these categories.

Clearly, the jury made no effort to follow the court's instructions requiring them to consider all of the evidence and to assess reasonable damages as shown by a preponderance of the evidence. This jury simply picked a figure and applied it to all four categories regardless of the proof.

This court, on the above alone, is persuaded that defendants are entitled to a new trial. This court is convinced that the jury's failure to follow the court's instructions on damages caused them to distress any notion that the jury followed the court's instructions on the matter of liability. The defendants are entitled to a new jury which will consider the evidence in conformity with the court's instructions of law.

In view of the jury's failure to follow the law on the matter of damages, this court now wonders whether the jury properly assessed the credibility of witnesses, especially the credibility of plaintiffs. One plaintiff offered what could only be described as

incredible testimony, yet, seemingly, the jury did not punish the plaintiff for this outrageous testimony. The plaintiff was asked by what funds had she purchased an expensive new automobile. She was questioned on this point because in her earlier direct testimony she had stated how this matter adversely had affected her financial status. After some verbal tussling with defense counsel, that plaintiff then offered the following, shocking disclosure: the money for the automobile had come directly from God who each month had placed it in her checking account. The question now is whether this jury properly weighed that testimony against her testimony alleging sexual harassment. This court is unsure, given the jury's action on damages.

To prevail, the plaintiffs had to show that the "workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations and quotations omitted).

Whether the conduct complained of arose to a sufficient level of abusiveness or hostility based on discriminatory intent depended on the totality of circumstances. While the witnesses at one point would say that they were harassed and nothing was done about it, they also would acknowledge that the offending party was admonished by a superior and that the offending conduct ceased. Based on this, the court simply is not confident that the jury took into consideration all the evidence presented.

Next is the performance of plaintiffs' counsel. As the record will reflect, all during the trial this court sought to keep plaintiffs' counsel between the lines of proper court decorum and professional conduct while not curbing their enthusiastic representation of

their clients. A reader of the record would notice that many occasions this court was called upon to admonish counsel. Although this court is not persuaded that counsel intended any disrespect to the court, this court still must factor counsel's conduct into the court's assessment of the jury's verdict. First, there is the matter of the Golden Rule argument, counsel asking the jury to put themselves in the shoes of the plaintiffs. A major factor recognized by the *Whitehead* court for overturning the jury's verdict in that case was plaintiffs' counsel's invocation of the Golden Rule. Plaintiffs' counsel *sub judice* resorted to the same inappropriate conduct.

Then, on too many occasions, counsel had to be warned about potentially inflammatory actions, such as referencing non-admitted witness statements during closing arguments, referring to non-admitted documents, having witnesses read from items marked for identification only, and speaking directly to witnesses when told not to do so.

Again, this court is not persuaded that plaintiffs' counsel meant disrespect for the court, but this court is not convinced that this conduct had no improper effect on the jury. When plaintiffs' counsel would transgress, defense counsel would object and the court would rule on the objection in front of the jury. On numerous occasions, this court had to sustain the objections made by defense counsel. This court now fears that the jury may have concluded that plaintiffs' counsel were being frustrated in their efforts to represent the plaintiffs and that combined with plaintiffs' counsel's improper conduct, the jury decided this case on bias and passion.

This court encourages vigorous and spirited representation of clients. The court expects, however, that such representation will be in conformity with the professional

rules of engagement and rules of evidence. Where counsel crosses the line, that counsel faces the risk of a mistrial during the trial and the grant of a motion for a new trial once the court has assessed the effect of such conduct on the jury's verdict.

While this court is concerned with the jury's assessment of all the evidence presented, this does not mean that the record is wholly lacking in credible evidence. For this reason, this court is persuaded that this matter should be submitted for a new trial so that any evidence supporting the plaintiffs' position may be presented with greater clarity.

**IT IS THEREFORE ORDERED AND ADJUDGED** that defendants' motion for a new trial is granted.

**SO ORDERED, this the 31st day of March, 2008.**

**s/ HENRY T. WINGATE**
**CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:04-cv-614 HTW-LRA
Memorandum Opinion and Order