**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

TIFFANY ALEXANDER, et al                                     **PLAINTIFFS**

**V.**                                          **CIVIL ACTION NO. 3:04CV614 HTW-LRA**

**CITY OF JACKSON, MISSISSIPPI, et al**                         **DEFENDANTS**

## <u>ORDER</u>

This matter comes before this court on a motion for attorney fees and costs
[docket no. 253] filed by plaintiffs Tiffany Alexander, Sandra Hawkins, Jacqueline
Moore, and Stacy Prophet, all employed at some time by the Jackson, Mississippi Fire
Department.  Plaintiffs contend that because they "prevailed" in this action upon a
$250,000 settlement which left open the issue of attorneys' fees, their legal team,
consisting of ten (10) attorneys and four (4) paralegals, is entitled to the sum of
$1,237,812.26 for attorney fees, expenses and costs. The defendant, City of Jackson,
Mississippi, which defended itself and the co-defendant five (5) firefighters, opposes
plaintiffs' motion for attorneys' fees and costs on multiple grounds:  that the plaintiffs
were not prevailing parties, and even if they were, that the request is excessive,
unreasonable, and out of line with the results the plaintiffs achieved in the settlement.

### I.  Litigation History

Plaintiffs filed separate charges of discrimination at the Equal Employment
Opportunity Commission ("EEOC")[1] in July 2003, claiming that they had been sexually

---

[1] Pursuant to 42 U.S.C. §2000e-5, a plaintiff must file a complaint with the EEOC within
180 days after an alleged discriminatory act has occurred. Timely filing of a charge with the
EEOC is a prerequisite to maintaining a Title VII suit. *Delaware State College v. Ricks*, 449 U.S.
250, 256 (1980).

harassed by their superiors at the City of Jackson Fire Department and retaliated against for reporting harassment or speaking up for themselves. In May 2004, the Department of Justice ("DOJ") issued plaintiffs "right to sue letters," and plaintiffs filed their Complaint initiating this lawsuit in August 2004.

All plaintiffs made claims for equitable relief and damages for sex discrimination in the form of sexual harassment and for retaliation under Title VII of the Civil Rights Act of 1964 as amended and Title 42 U.S.C. § 1983[2] against the City of Jackson. Likewise, all plaintiffs made claims for equitable relief and damages for sex discrimination in the form of sexual harassment and for retaliation under § 1983 against Defendant Chief Raymond McNulty. Plaintiffs Alexander, Hawkins, and Moore have made claims for equitable relief and damages for sex discrimination in the form of sexual harassment under § 1983 against Division Chief Luther Thompson. Plaintiffs Alexander and Moore made claims for equitable relief and damages for retaliation under § 1983 against Thompson. Plaintiff Hawkins made claims for equitable relief and damages for sex discrimination in the form of sexual harassment under § 1983 against Division Chief Larry Smith. Plaintiff Prophet made claims for equitable relief and damages for sex discrimination in the form of sexual harassment under § 1983 against Captains Howard

---

[2]Section 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

Taylor and Herman Watley. Plaintiffs Hawkins and Prophet both made claims for equitable relief and damages for sex discrimination in the form of sexual harassment under §1983 against defendant Michael Sterling. The plaintiffs settled their claims against Michael Sterling before trial.

This dispute proceeded to trial on April 30, 2007, and ended on May 31, 2007. Plaintiffs were represented at trial by attorneys Molly Elkins and Ellen Eardley, from Woodley & Gillivary of Washington, D.C., and by local attorneys, Louis Watson and Nick Norris of Jackson, Mississippi. The City of Jackson principally was represented by Pieter Teeuwissen, Anthony R. Simon, and Kimberly Banks of the City of Jackson Litigation Division.  The jury returned a verdict in favor of plaintiffs [docket nos. 168-69] on May 31, 2007, on all of their claims and against each and every defendant. The jury awarded plaintiffs over $750,000.00 in damages [docket nos. 168-69].

Remarkably the jury awarded each of the four plaintiffs exactly the same amount in various categories of damages. Below is the damages section from the "Form of the Verdict":

### Tiffany Alexander

| | |
|---|---|
| 28,561.80 | Past physical harm to plaintiff, including ill health, physical pain, disability, disfigurement |
| 28,561.80 | Future physical harm that plaintiff is reasonably certain to experience in the future |
| 28,561.80 | Past emotional and mental harm |
| 28,561.80 | Future emotional and mental harm |
| 7,891.39 | Reasonable value of medical, psychological, hospital, nursing expenses, and medical supply bills that plaintiff reasonably needed and actually obtained |

3

| | |
|---|---|
| 37,861.41 | Lost wages, salary and profits relative to leave |
| 160,000.00 | Total |

## Sandra Hawkins

| | |
|---|---|
| 25,000.00 | Past physical harm to plaintiff, including ill health, physical pain, disability, disfigurement |
| 25,000.00 | Future physical harm that plaintiff is reasonably certain to experience |
| 25,000.00 | Past emotional and mental harm |
| 25,000.00 | Future emotional and mental harm |
| 1,613.91 | Reasonable value of medical, psychological, hospital, nursing expenses, and medical supply bills that plaintiff reasonably needed and actually obtained |
| 58,386.09 | Lost wages, salary and profits relative to leave |
| 160,000.00 | Total |

## Jacqueline Moore

| | |
|---|---|
| 25,084.26 | Past physical harm to plaintiff, including ill health, physical pain, disability, disfigurement |
| 25,084.26 | Future physical harm that plaintiff is reasonably certain to experience |
| 25,084.26 | Past emotional and mental harm |
| 25,084.26 | Future emotional and mental harm |
| 0 | Reasonable value of medical, psychological, hospital, nursing expenses, and medical supply bills that plaintiff reasonably needed and actually obtained |
| 27,662.96 | Lost wages, salary and profits relative to leave |
| 128,000.00 | Total |

4

Stacy Prophet

| | |
|---|---|
| 30,936.48 | Past physical harm to plaintiff, including ill health, physical pain, disability, disfigurement |
| 30,936.48 | Future physical harm that plaintiff is reasonably certain to experience |
| 30,936.48 | Past emotional and mental harm |
| | Future emotional and mental harm |
| 30,936.48 | Reasonable value of medical, psychological, hospital, nursing expenses, and medical supply bills that plaintiff reasonably needed and actually obtained |
| 83,518.16 | Lost wages, salary and profits relative to leave |
| 210,000.00 | Total |

On March 31, 2008, this court granted the defendants' motion for a new trial [docket no. 212]. The court's stated grounds in its Order were multiple, pointing to the jury's failure to follow instructions; and to the improper conduct of plaintiffs' trial attorneys of speaking directly to witnesses when told not to do so. This amounted to a blatant attempt to coach testifying witnesses. The Order granting a new trial also mentioned that plaintiffs' counsel had utilized the "Golden Rule" argument,[3] referenced non-admitted witness statements and documents, and had witnesses read from items marked only for identification.

---

[3] An attorney makes a Golden Rule argument when she asks the jury to put themselves in the plaintiffs' shoes. This type of argument was condemned by the trial court and appellate court in *Whitehead v. Kmart Corp.*, 163 F.3d 265 (5th Cir. 1998). Incidentally, in *Whitehead*, although the trial court *sua sponte* had sanctioned plaintiff's attorney for misbehavior at trial, including use of the Golden Rule argument, and *sua sponte* had instructed the jury to disregard certain inappropriate conduct, the Fifth Circuit ordered a new trial, oblivious to the remedies the trial court already had imposed, and apparently on the notion that at re-trial the plaintiffs would obtain a reduced monetary verdict. At re-trial, plaintiff was awarded almost two (2) million dollars more.

Also, remarkably, the jury's assessment of plaintiff Sandra Hawkin's credibility apparently was not affected by her "supernatural" testimony. This "supernatural" testimony occurred when she was being cross-examined by one of the City's attorneys on how she was able to make timely monthly notes on a recently purchased car, in view of her earlier testimony on direct examination that since her departure from City employment, she had scarce financial resources. Ms. Hawkins acknowledged purchasing the vehicle and driving it to the courthouse that morning, but as to how she had been able to afford monthly notes, she said that each month, money for her car note miraculously had appeared in her checking account, coming directly from God.

Below is the portion of the transcript containing this testimony:

Q. OKAY. YOU MENTIONED ALSO THAT THERE WERE SOME DAYS THAT YOU HAD TO WALK. DO YOU REMEMBER TESTIFYING TO THAT TODAY?

A. YES.

Q. BUT YOU'RE NOT WALKING TODAY, ARE YOU?

A. NO.

Q. AS A MATTER OF FACT, I'VE SEEN YOU COME INTO COURT AND YOU HAVE A NISSAN ARMADA SE. CORRECT?

A. I DO.

Q. WHAT YEAR IS THAT VEHICLE?

A. IT'S A 2005.

Q. HOW MUCH DID IT COST?

A. I BELIEVE IT WAS 20,000.

Q. HOW MUCH IS THE MONTHLY NOTE?

A. 578.

Q. AND WHO PAYS THAT NOTE?

A. BY THE GRACE OF GOD, SUPERNATURALLY, IT'S PAID EVERY MONTH.

Q. SO YOU PAY IT YOURSELF.

A. NO. SUPERNATURALLY, IT'S PAID FOR EVERY MONTH.

Q. I'M NOT SURE IF I UNDERSTAND. COULD YOU EXPLAIN TO US WHAT YOU MEAN BY "SUPERNATURALLY IT'S PAID"?

A. WHEN I SAY "SUPERNATURALLY," I MEAN MONEY COME UP IN MY ACCOUNT EVERY MONTH TO PAY IT BECAUSE THE LORD IS THE ONE WHO BLESSED ME WITH IT. Trial Transcript, Volume 7 at 1042.

On re-direct, her attorney chose not to revisit the discussion.

Following this court's grant of a new trial, the parties agreed to mediate their dispute.  The effort proved successful.  The parties thereafter settled for a monetary award, to plaintiffs collectively, of approximately $250,00 and an agreement by the City to "revise and improve its sexual harassment policy" and "its sexual harassment training program". The plaintiffs accepted in settlement $500,000 less than the earlier jury award.  On February 20, 2009, this court approved the parties' settlement agreement and entered final judgment in this matter [docket no.s 251-52].

Plaintiffs now contend that they are entitled to attorneys' fees pursuant to Title 42 U.S.C. § 1988(b) and Title 42 U.S.C. § 2000e-5(k). Section 1988(b) provides that in any action or proceeding to enforce a provision of § 1983, inter alia, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . ."

Section 2000e-5(k) states:

In any action or proceeding under this title [42 USCS §§ 2000e et seq.] the court, in its discretion, may allow the prevailing party, other than the

7

Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs. . .

## II.  Whether Plaintiffs Are a Prevailing Party

Under these statutes, a plaintiff must be a "prevailing party" to receive an award of attorney's fees. Two reasons persuade this court to find the plaintiffs herein to be prevailing parties. First, the settlement agreement explicitly states that the defendants will not contest attorneys' fees on the ground that the plaintiffs did not prevail. Settlement Agreement [docket no. 251], ¶ 12. Secondly, the plaintiffs fulfill the test established by a long history of civil rights cases for determining if a party is considered "prevailing." Each reason is discussed below.

### A.  The Settlement Agreement

The parties agreed to mediation and sought to reach a global settlement, one addressing damages and attorney fees. This proved impossible; so, they came to a definite settlement on damages, but agreed to disagree on the attorneys' fees and costs, leaving that matter for the court to resolve. The plaintiffs and defendants then signed a settlement agreement stating that "the defendants will not contest an award of attorney's fees and expenses to the plaintiffs on the basis or position that the plaintiffs are not the prevailing parties." Settlement Agreement [docket no. 251], ¶ 12. This court approved that settlement agreement, incorporated it into the court's final order and judgment, and retained jurisdiction "for the purpose of determining plaintiffs' petition for attorneys' fees and expenses and for enforcing compliance with the terms of the Settlement Agreement." Final order and judgment [docket no. 252].

### B.  Prevailing party as defined by case precedent

Under case precedent, in order to be deemed a "prevailing party," plaintiff must "receive some relief on the merits of his claim," *Yousuf v. Motiva Enters. LLC*, 246 Fed. Appx. 891, 893 (5th Cir. 2007) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't Health & Human Res.*, 532 U.S. 598, 603-04, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)) and "obtain actual relief, such as an enforceable judgment or consent decree, that materially alters the legal relationship between the parties and modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement," *Yousuf*, 246 Fed. Appx. at 893 (citing *Energy Mgmt. Corp v. City of Shreveport*, v. 467 F.3d 471, 482 (5th Cir. 2006)).

Settlement agreements can serve as the basis for awards of attorney's fees when the agreement "achiev[es] some of the benefit [plaintiff] sought to obtain on the merits before the court." *Yousuf*, 246 Fed. Appx. at 895-96. Ordinarily, though, settling parties address and counter this possibility in the settling documents. Defendant, here, as part of settlement, agreed not to do so.

Plaintiffs in the present action sought damages for physical, mental and emotional injuries, and the defendants agreed in the settlement agreement to award a specified amount of damages, in a different amount to each plaintiff "to compensate [each plaintiff] for her claims for personal physical injuries and physical sickness." (settlement agreement, docket no. 262-4, pages 2-3 of 8).  Further, plaintiffs sought to enjoin the behavior, including sexual harassment and retaliation, of which they complained. In consideration for dismissal of plaintiffs' claims, the City agreed to

9

improve its sexual harassment and retaliation policies and require annual training on those policies. Plaintiffs thus received monetary relief, as well as relief in the form of a judicially enforceable agreement requiring the defendants to adhere to policies to prevent sexual harassment and retaliation, some of the relief sought in the plaintiffs' complaint.

Defendant ignores its agreement in the settling agreement not to contest prevailing party status and argues that since plaintiffs have neither a judgment on the merits nor a consent decree, they cannot be a "prevailing party." Defendants contend that private settlements lack the necessary judicial imprimatur on the defendants' change in conduct.  This is not so;  "[J]udicial action other than a judgment on the merits or a consent decree can support an award of attorney's fees, so long as the action carries with it sufficient judicial imprimatur." *Perez v. Westchester County Dep't of Corr.*, 587 F.3d 143 (2d Cir. 2009) (citing *Roberson v. Giuliani*, 346 F.3d 75 (2d Cir. 2003) (citing, inter alia, *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1319 (11th Cir. 2002) ("The district court interpreted *Buckhannon* to stand for the proposition that a plaintiff could be a 'prevailing party' only if it achieved a judgment on the merits or a consent decree. That reading of *Buckhannon*, however, is overly narrow.") and *Smyth v. Rivero*, 282 F.3d 268, 281 (4th Cir. 2002) ("We doubt that the Supreme Court's guidance in *Buckhannon* was intended to be interpreted so restrictively as to require that the words 'consent decree' be used explicitly.")). A private settlement agreement can confer prevailing party status on a plaintiff when the parties' obligation to comply with the terms of the settlement agreement is made a part of the order of dismissal by a

provision retaining jurisdiction over the settlement agreement or incorporating the terms of the settlement agreement in the order of dismissal. *Perez,* 587 F.3d at 151-52 (citing *Buckhannon*, 532 U.S. at 604 n.7 (citing *Kokkonen v. Guardian Life Insurance of America*, 511 U.S. 375, 128 L. Ed. 2d 391, 114 S. Ct. 1673 (1994)). *See also Bell v. Bd. of County Comm'rs*, 451 F.3d 1097, 1103 (10th Cir. 2006) (If a court incorporates a private settlement into an order, provides written approval of the settlement's terms, and retains jurisdiction to enforce performance of the obligations in the settlement agreement, the settlement can confer prevailing party status on the party whose claims are settled).

In this court's order of dismissal, it approved the terms of the settlement agreement, incorporated the terms of the agreement into its order, stated that it would retain jurisdiction for the purpose of determining attorney's fees as well as for enforcing compliance with the terms of the settlement agreement. The defendants now will be legally required to make the aforementioned changes they have agreed to make in the settlement agreement as it pertains to policies and training concerning sexual harassment and retaliation.

### III.  LODESTAR - General Discussion

The starting point to determine whether attorney's fees are reasonable is to calculate the "lodestar," or "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983). The lodestar calculation is presumed to be a reasonable fee, but may be adjusted upward or downward based on evaluation of specific factors. *Watkins*, 7 F.3d at 459.

11

To calculate the lodestar, the court should first identify the "number of hours reasonably expended on the litigation." *Id*. The party seeking attorney's fees bears the burden to submit "adequately documented time records to the court."  *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The court should reduce the hours to eliminate "all time that is excessive, duplicative, or inadequately documented." *Id*.

Next the court must assess the hourly rate requested, to determine if it is a reasonable hourly rate. The court looks to the prevailing market rate in the local market. *Missouri v. Jenkins*, 491 U.S. 274 (1989); *Watkins*, 7 F.3d at 458-59; *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986)(citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). The requested market rate may be supported by affidavits of attorneys who practice in the locality in question. 7 F.3d at 458-59. "If the attorney's normal billing rate is within the range of market rates for attorneys with similar skill and experience, and the trial court chooses a different rate, the court must articulate its reason for doing so." *Watkins*, 7 F.3d at 459.

The court may include hours spent by an attorney representing a plaintiff before an Equal Employment Opportunity Commission ("EEOC") investigation and hearing. *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 553 (5th Cir. 1987)(The court reversed an exclusion of attorney fees for representation before the EEOC, stating, "The court also erred in concluding that travel time to and from the EEOC hearing, and time before the EEOC, was not compensable. Time spent representing a client before the EEOC when required by Title VII is compensable under 42 U.S.C. § 2000e-5(k).").

Once the court has calculated the lodestar, it may adjust the fee award by

applying the *Johnson* factors. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989)(citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). Stated differently, the matter of attorney's fees is within the discretion of the court, but "in exercising that discretion . . . the district court must heed the twelve-factor analysis of *Johnson v. Ga. Highway Express, Inc.*" *Giles v. GE*, 245 F.3d 474, 490 (5th Cir. 2001). The district court need not provide analysis in meticulous detail, "but it must articulate and clearly apply the *Johnson* criteria." *Giles,* 245 F.3d at 490 *(citing Riley*, Riley v. City of Jackson, 99 F.3d 757, 760 (5th Cir. 1996)). The twelve factors articulated in the *Johnson* case are:

> (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Giles*, 245 F.3d at 490 n.29 (citing *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 n.4 (5th Cir. 1998)).

## A.  Lodestar Calculation *Sub Judice*

So, first this court must determine how many hours were reasonably expended to accomplish the final outcome in this case. Plaintiffs place that number at approximately 4,180 hours. This includes 3,842.2 hours for the team from Woodley & McGillivary and 337.7 hours for the local attorneys and paralegal at Louis H. Watson, Jr. P.A. To determine whether these hours were reasonably expended, the court must conduct a searching analysis of these billed times.

This litigation presents four (4) City fire department employees with essentially

three (3) types of claims: 1) hostile work environment sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §§ 2000e *et seq*; 2) deprivation of constitutional rights and privileges under Title 42 U.S.C. § 1983; and 3) retaliation in violation of Title VII of the Civil Rights Act and Title 42 U.S.C. § 1983. Although plaintiffs pursue slightly different claims against the different individual defendants and the City, at re-trial the legal theories would boil down to these three categories.

At trial, to succeed in their Title VII claim of hostile work environment, the plaintiffs must show that:

> "the defendants engaged in unwelcome conduct that is based on the plaintiff's sex or gender. [. . .] the conduct [was] sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create[d] a hostile or abusive work environment. To determine whether the conduct in this case rises to a level that alter[ed] the terms or conditions of plaintiff's employment, [the jury] should consider all of the circumstances, [. . .] including the frequency of the conduct, the severity, whether it is physically threatening or humiliating or a mere offensive utterance and whether it unreasonably interferes with the plaintiff's work performance . . . [P]laintiff must actually find the conduct offensive. Next, [the jury] must look at the evidence from the perspective of a reasonable person [. . .] [T]he alleged harassing behavior must be such that a reasonable person in the same or similar circumstances as plaintiff would find the conduct offensive." Transcript of jury instructions at 32-33, May 30, 2007.

The Fifth Circuit has found that sex discrimination actions under § 1983 parallel Title VII claims and require the same elements to be proved. *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 554 (5th Cir. 1997)(citing *Cervantez v. Bexar County Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996).

To succeed on a quid pro quo sexual harassment claim:

each plaintiff would have to prove that (A) defendant supervisor whom she

14

has accused made sexual advances, request or demands to her; (B) that plaintiff rejected the supervisor's sexual advances, requests or demands; (C) that plaintiff suffered a tangible employment action; and (D) that the City of Jackson Fire Department took the action relative to the tangible employment matter because plaintiff rejected a supervisor's sexual advances, requests or demands. Transcript of jury instructions at 36, May 30, 2007.

To prove a prima facie case for retaliation under Title VII and Section 1983:

a plaintiff must prove that the City of Jackson Fire Department took a materially adverse employment action against a plaintiff that would dissuade a reasonable employee from making or supporting a claim of discrimination or harassment. Protected activity includes opposing an employment practice that is unlawful under Title VII, making a charge of discrimination or harassment or testifying, assisting or participating in any manner in any investigation, proceeding or hearing under Title VII. A protected activity may also include rejecting the unwanted sexual advances or sexual harassment of a co-worker or supervisor. Transcript of jury instructions at 40, May 30, 2007.

So, although there are four plaintiffs pressing multiple claims against multiple defendants, the facts necessary to succeed are intertwined and overlapping.

At the trial, now set aside, plaintiffs' attorneys examined twenty-two (22) witnesses, including the four plaintiffs in their case-in-chief, and introduced approximately fifty-nine (59) exhibits into evidence. The trial was essentially a case of "he said/ she said." Plaintiffs include hours expended for that trial as vital aspects of their now requested fees. Based, however, on the straightforward nature of the legal and factual issues involved and the overlapping nature of the claims, this court finds much excess in plaintiffs' requests.

Furthermore, the plaintiffs prevailed through settlement. This does not change their status as prevailing parties for the purposes of an award of fees and costs, but, here, that situation does impact. The Fifth Circuit has instructed that the district court

15

may award attorney's fees and costs for a first trial even when it ends in mistrial and a second trial is necessary. *See Abner v. Kansas City S. Railway Co.*, 541 F.3d 372 (5th Cir. 2008). In that lawsuit, the plaintiffs, suing for employment discrimination under Title VII, prevailed in a second trial, after the first trial had ended in a hung jury. A factor considered by the court was the conduct and possible culpability of the plaintiffs' attorneys as to the outcome of the first case. The court cited cases from other circuits where the attorney's conduct had impacted the award of fees, stating "*O'Rourke* is informative in its implication that ***where a party does not cause the voiding of a trial***, that party may receive fees." 541 F.3d at 380 (citing *O'Rourke v. City of Providence*, 235 F.3d 713 (1st Cir. 2001)(emphasis added).

In the instant case, as demonstrated by this court's memorandum opinion and order granting defendants a new trial, the conduct of the plaintiffs' attorneys compromised the initial proceedings and contributed to the grant of a new trial. [docket no. 212, 9-11]. This court cited instances of plaintiffs' counsel employing the Golden Rule argument, repeated warnings from the court regarding referencing non-admitted witness statements and documents, and having witnesses read from documents which were marked for identification only. Additionally this court had to sustain numerous objections from defense counsel in front of the jury for improper conduct on the part of plaintiffs' counsel.

Plaintiffs cite this court's order granting a new trial saying "Although the Court considered the conduct of plaintiffs' counsel in its Memorandum and Order [. . .], the Court did not order a new trial because of that conduct. Indeed the Court noted that 'this court is not persuaded that plaintiffs' counsel meant disrespect for the Court.'"

Plaintiff's reply to defendants opposition to plaintiff's petition for award of attorneys' fees and expenses, docket no. 262, p. 22 n. 9. Plaintiffs fail to recognize that, regardless of their intentions toward the court while committing multiple errors, the effect of those errors on the jury was the same. Whether the repeated glaring disregard for the instructions of the court by plaintiffs' attorneys stemmed from intentional disrespect, negligence, or inexperience, the jury was negatively impacted and the outcome of the trial had to be voided. The court clearly could have sanctioned Ms. Elkin and Ms. Eardley during trial for their inappropriate trial conduct and their failure to grasp and/or follow elementary trial procedures.

Then, on this matter of hours expended, and the issue of reasonableness, defendants cite, quite rightly, the unmistakably excessive number of attorneys involved in prosecuting plaintiffs claims, then seeking attorney fees, Plaintiffs would have the court give holiday presents to ten (10) separate attorneys and four (4) paralegals.

Plaintiffs seek recompense for 4,180 hours "reasonably spent" in achieving their favorable outcome. This litigation began with EEOC complaints, proceeded to unsuccessful mediation attempts, then trial, verdict, post-judgment motions, order setting aside verdicts, mediation and settlement. According to plaintiffs, a total of ten (10) attorneys and four (4) paralegals were vital to that outcome. Further, plaintiffs take the position that every stage of each proceeding above is wholly compensable. Should this court adopt plaintiffs' approach, this court would compensate plaintiff's attorneys and paralegals for each and every activity before settlement and in preparation for a new trial.

A key question thus presents itself.  Where a lawsuit results in settlement

following a mistrial, what kind of calculus should the court utilize in determining "hours reasonably expended to achieve the ultimate outcome"? Obviously, the court must assess and weigh the outcome against plaintiffs' ambitions as stated in the complaint/ pre-trial order. Then, in scrutinizing the outcome, the court should evaluate the proximate impact upon the ultimate outcome generated by the claimed hours in the claimed activity. Consequently, the court has examined in detail all time sheets submitted, and deducted numerous hours as outlined in the next section.

### 1. Hours reasonably expended

Defendants request that the court eliminate all hours for the following attorneys: Heidi Burakiewicz, Diedre Fitzpatrick, Megan Mechak, Kimberly Perkins, Lauren Schwartzreich, Thomas Woodley, all of the Woodley & Gillivary Law Firm, and Louis Watson, and Nick Norris, local counsel practicing together at Louis H. Watson, Jr., P.A. The court has examined each of the time sheets for these attorneys and the stage of the litigation at the time the hours were claimed, and eliminated hours based on specific findings of duplication of work, excessiveness, or inadequate documentation.

### a. Attorney Heidi Burakiewicz

Attorney Burakiewicz submits 318.60 hours for recompense. She did not appear at any of the trial proceedings. She allegedly incurred 110.3 hours in 2003 prior to the filing of plaintiffs' complaint, during the initial EEOC complaint and that agency's investigation. When a complaint to the EEOC is a mandatory prerequisite to filing suit, attorney hours expended on that complaint and the following investigation are taxable. *Curtis*, 822 F.2d at 553. Therefore, the court allows these 110.3 hours to be taxed to the City. Attorney Burakiewicz says she continued work in conjunction with the EEOC

18

investigation, which culminated in May of 2004, pre-trial, litigation and post-trial matters through 2008, but this court finds these hours duplicative of those expended by Attorneys Elkin and Eardley, and excludes all further hours claimed by Attorney Burakiewicz. This exclusion eliminates 208.3 hours. Travel expenses for Attorney Burakiewicz during 2003 are also allowed, but expenses for alleged travel occurring after 2003 are excluded.

b.  Attorney Diedre Fitzpatrick

Attorney Diedre Fitzpatrick requests compensation for 221.60 hours. She was supposedly involved in this case in 2004 and 2005 during the EEOC investigation and leading up to the time the complaint was filed. Ms. Fitzpatrick entered an appearance, but did not appear at trial or in any motion hearings before the court. The court eliminates the alleged work done by Diedre Fitzpatrick as duplicative of the hours claimed by attorneys Molly Elkin in 2004 and Ellen Eardley in 2005. This eliminates 221.60 hours.

c.  Attorney Megan Mechak

Attorney Mechak requests compensation for 219.7 hours. She entered an appearance after the mistrial, but did not appear earlier at trial nor participate in motion hearings or other proceedings before the court. She supposedly expended hours in 2008, focused primarily on preparation for the second trial which never occurred. Her time sheets cite "Review and analyze trial transcript" as well as work on multiple motions *in limine*. Between October 2008 and March 2009, Attorney Mechak expended, she says, approximately 43.3 hours working on the fee petition. The court allows the time spent by Attorney Mechak for work on the fee petition and excludes all other hours

19

expended by her as duplicative and/or excessive. This results in exclusion of 176.4 hours.

    d.   Attorney Kimberly Perkins

Attorney Perkins request recompense for 49.8 hours. She did not enter an appearance in this case. The court excludes the hours of Kimberly Perkins as duplicative and excessive. Her hours are based on duplicative efforts to further the plaintiffs cause during the EEOC investigation and mediation. The court also excludes travel expenses incurred by Ms. Perkins for the same reason. This excludes 49.8 hours.

    e.   Attorney Lauren Schwartzreich

Attorney Schwartzreich did not enter an appearance in this case. From 2005 through 2007, Attorney Schwartzreich spent, she says, 174.9 hours engaged in a variety of research, drafting and communication. For these same years, attorneys Elkin and Eardley have asked the court for payment of $608,812.50 for a total of 2,450.6 hours. Therefore, the court finds Attorney Schwartzreich's claimed hours duplicative of those expended by attorneys Elkin and Eardley, and excludes them.

    f.   Attorney Thomas Woodley

Partner Thomas Woodley seeks recompense for 122.6 hours in this case. His time sheet is replete with ambiguous references to "office conferences", "review of files" and "emails re status." Following is the first page of Mr. Woodley's time sheet:

| | | |
|---|---|---|
| 6/3/2003 | 0.9 | Office conference re strategy |
| 6/9/2003 | 0.4 | Further office conference re facts for purposes of complaint |
| 6/12/2003 | 0.5 | Office conference re handling of case and related issues |
| 7/31/2003 | 0.4 | Office conference re strategy |
| 11/20/2003 | 0.3 | Office conference re status |

| | | |
|---|---|---|
| 3/4/2004 | 1.2 | Conference with fire fighter representative Todd re status and strategy; office conference re same; preparation of file memorandum re same |
| 3/8/2004 | 0.9 | Several office conferences re mediation strategy |
| 3/30/2004 | 0.3 | Office conference re status |
| 7/16/2004 | 0.3 | Office conference re strategy |
| 11/22/2004 | 0.5 | Office conference re discovery and pleading issues |
| 2/9/2005 | 0.2 | Office conference re status |
| 3/15/2005 | 0.3 | Email re status |
| 4/4/2005 | 1.5 | Review files; exchange of emails re issues and facts |
| 2/13/2006 | 0.7 | Office conference re strategy in mediation and settlement conference |
| 7/7/2006 | 0.3 | Office conference re status |
| 7/25/2006 | 0.3 | Office conference re depositions |
| 11/21/2006 | 0.3 | Office conference re depositions |
| 1/22/2007 | 0.4 | Office conference and emails re strategy |
| 2/20/2007 | 1.5 | Review and edit settlement demand letter; emails re same |
| 3/7/2007 | 0.3 | Emails and office conference re settlement |
| 3/9/2007 | 0.3 | Internal emails re status |

These time entries provide no "who, what or why" with respect to Mr. Woodley's activities. After the trial, Mr. Woodley expended approximately 62.8 hours toward the successful settlement with the City of Jackson. The court allows these hours only. The court excludes 59.8 of Mr. Woodley's hours.

g.  Attorneys Molly Elkin and Ellen Eardley

i. *Depositions*

Plaintiffs cite nineteen or twenty depositions conducted by Ms. Elkin and Ms. Eardley in their fee petition. These two attorneys say they expended more than two-hundred and thirty nine (239) hours preparing for depositions and one-hundred and eighty-six (186) hours conducting the depositions. This totals approximately four-hundred and twenty-five (425) hours or, at eight hours per day, fifty-three (53) full work days dedicated to depositions. At their requested rates, this adds up to more than

21

$100,000. Plaintiffs also seek reimbursement of $13,732 for deposition transcripts.

This court deducts 60.8 hours from Ms. Elkin's time related to depositions as duplicative of work done by Ms. Eardley. Ms. Eardley notes in her time sheets expending approximately three-hundred and sixty-five (365) hours preparing for and conducting depositions. The court deducts thirty percent of these hours or one-hundred and nine and a half (109.5) hours as excessive.

*ii. Office Conferences*

Defendants have raised the question of whether plaintiffs' attorneys expended duplicative hours in "office conferences" with multiple attorneys discussing the case. The time sheets, especially those of Ms. Eardley, show a large number of entries entitled "office conference" or with an activity followed by "office conference re: same". This court counted more than two-hundred instances of "office conferences" or "interoffice conferences" listed in Ms. Eardley's time sheet between September 2005 and May 2007. Because Ms. Eardley's accounted for time in blocks, including multiple activities in a single time entry, the court cannot distinguish if these office conferences expended .20 of an hour or the entire time reported. For example on January 31, 2006, Ms. Eardley's entry states she spent 6.9 hours conducting the following activities:

> Telephone conferences with Stacy Prophet's telephone companies re: subpoena; **office conferences re: same**; draft initial disclosures and privilege log; **office conference re: same**; compile documents for initial disclosures; contact expert witnesses.

The court correlated some of these entries with other attorneys and found similar entries on similar dates. For example, November 17, 2005, Attorneys Eardley, Elkin, Fitzpatrick, and Burakiewicz each cite office conferences for varying amounts of time.

These conferences have different descriptions, such as for "factual issues" or "organization of file in preparation for discovery," and are too vague to be compensable. The time sheets do not clearly show if Attorney Eardley worked on a matter, then went from office to office conversing with other attorneys, or if a group of attorneys met simultaneously. Whether these hours are duplicative or not, the court considers them to be excessive. This indicates to the court that plaintiffs' attorneys failed to exercise adequate billing judgment.

Therefore, Ms. Eardley's time will be reduced by thirty percent (30%) to account for excessive hours conferring with other attorneys and paralegals.

### iii. Other deductions

The court also deducted 18.8 hours Ms. Elkin spent working on the attorney fee petition as duplicative of Ms. Mechak's work.

### h. Attorney Louis Watson

The defendant argues that Attorney Watson participated only minimally in the preparation, litigation and subsequent settlement of this case. Mr. Watson has submitted 208.3 hours for taxation to defendants. He examined one witness and conducted one cross examination, while billing for sixteen (16) days of attendance at trial. He filed pro hac vice motions and a motion for withdrawal for other attorneys associated with the case. Additionally, according to the court's docket notations, he appeared at approximately six status conferences or motion hearings before the court. In one pretrial conference Mr. Watson was the only attorney present representing the plaintiffs.

23

i.  Attorney Nick Norris

Mr. Norris requests compensation for 118.9 hours. Mr. Norris worked as an associate with Mr. Watson's local firm, Louis H. Watson, Jr., P.A. These two attorneys served as local counsel. Mr. Norris conducted one cross examination at trial, while billing for sixteen (16) days of attendance. Mr. Norris also appeared at a status conference, a motion hearing and was listed in attendance at a conference call with the court. This court finds Mr. Norris' hours mostly duplicative of Mr. Watson's.

Both attorneys Norris and Watson, however, cross-examined individual defendants at trial. Attorney Norris questioned defendant Captain Howard Taylor, while Attorney Watson examined defendant Captain Herman Watley. Their law firm, is entitled to some recompense for preparation and trial, but their law firm was not the lead firm. The court grants them their hours with a thirty percent (30%) reduction, for a total reduction of 62.49 hours for Mr. Watson and 35.67 hours for Mr. Norris.

j.  Paralegals

Plaintiffs request taxation of $4,470 for 44.7 hours expended by four paralegals, three (3) at Woodley & McGillivary, and one (1) at Louis H. Watson, Jr., P.A. The court did not deduct any hours expended by these paralegals.

**2.  Reasonable hourly rates**

The plaintiffs request higher hourly rates for attorneys from Washington, D.C., than for local attorneys. For attorneys from the Washington firm of Woodley & McGillivary, plaintiffs request $300/ hour for partners, $225/ hour for associates, and $100/ hour for paralegals. For local attorneys from Louis H. Watson, Jr., P.A., plaintiffs request $250/ hour for partners, $200/ hour for associates, and $100/ hour for

24

paralegals.

Plaintiffs support this hourly rate with affidavits from Mississippi attorneys Steven H. Funderberg and Roger K. Doolittle stating that both the rates requested by Woodley & McGillivary and those requested by Louis Watson, Jr., P.A. are reasonable and comport with the prevailing local market rates. Not to be overlooked is that attorney Funderberg initially appeared in this case as plaintiffs' counsel.

Plaintiffs' attorneys provide affidavits attesting that they usually charge higher rates and have received awards in other districts calculated on higher rates. They also provide case law from the Fifth Circuit in which attorneys in similar litigation were awarded fees calculated from rates ranging from $150 per hour up to $350 per hour. Some of these cases, however, were litigated in Texas and Louisiana. This court will not consider attorney fee awards from Texas and Louisiana because the rates must be based on the "local market," which the Fifth Circuit defines as the "community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

The maximum hourly rate cited in the Southern District of Mississippi cases referenced by plaintiffs is $275. Furthermore, in Attorney Louis Watson's affidavit, he states he has practiced employment law for over seventeen years, and has represented over a thousand plaintiffs in approximately eight federal district courts. Because of his experience and specialization in employment law and litigation, he requests an hourly rate of two-hundred and fifty (250) dollars per hour.  Ms. Elkin requests three hundred (300) dollars per hour, a fifty-dollar premium over Mr. Watson, apparently based on her role in the litigation.

Plaintiffs contend that because their rates are within a range which is

comparable to local rates, and defendants did not explicitly contest their rates, then this court must grant these rates as reasonable. Plaintiffs' reply to defendants' opposition to plaintiffs' petition for award of attorneys' fees and expenses [docket no. 262], p 14, citing *Islamic Center of Mississippi, Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989). In *Islamic Center*, unlike the instant case, the district court provided no explanation for a reduction in the fees requested.

Furthermore, the Fifth Circuit has affirmed a *sua sponte* reduction in attorney fees and costs even when the motion for fees was unopposed. *See Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549 (5th Cir. 1987). In *Bill Hanna Ford*, the court stated that "42 U.S.C. § 2000e-5(k) does not permit the award of any fees requested, but only of 'reasonable attorney's fees.' It also entrusts the award of fees to the court's discretion." 822 F.2d at 551.

Finally, plaintiffs have provided or cited from the Southern District of Mississippi, a number of cases, none of which has awarded a fee of $300 per hour. And although the defendants did not argue for a specific market rate to be applied to the hours claimed by plaintiffs' attorneys, defendant compared the rates requested by plaintiffs' attorneys to their own rates. The City attorneys stated that if their hourly rates were calculated they would come to $25 to $43 per hour.

Based on the cases provided by plaintiffs, affidavits of local attorneys Funderburg and Doolittle, and the affidavits provided by the plaintiffs' attorneys themselves, this court deems the rates requested by Mr. Watson to be appropriate and reasonable hourly rates for the local market. These rates are: $250 for partners, $200 for associates, and $100 for paralegals.

## IV.  Application of the Johnson Factors

### A.  Time and Labor Required

This factor is affected by the number of plaintiffs and defendants and complexity of the claims asserted. This case combined complaints by four plaintiffs and multiple defendants, including the City of Jackson. A long history of established statutory and case law has reduced the complexity of civil rights litigation. The plaintiffs claims also were similar, with factual matters and witnesses overlapping. Therefore, the court makes no upward adjustment based on this factor.

### B.  Novelty and Difficulty of the Issues

As mentioned above, the civil rights legislation has progressed significantly over the years since the passage of the Civil Rights Act. This case presented no particularly novel or difficult issues.

### C.  Skill Required to Perform the Legal Services Properly

The plaintiffs' attorneys have specialized in the area of employment law and civil rights law. The market rates calculated by this court in the lodestar calculation take into account a specialization.

### D.  Preclusion of Other Employment

Plaintiffs' attorneys argue that because their firm is small and specialized, taking on a case of this size precluded them from taking other significant cases. Plaintiffs litigated this case over the course of six years and the lodestar takes that into consideration and compensates them for the reasonable hours expended for this effort. The court declines to adjust the lodestar based on this factor.

27

### E.  Customary Fee

The customary fee for this type of litigation varies and is not factored into the award of fees in this case.

### F.  Whether the Fee is Fixed or Contingent

This factor also did not affect the calculation of fees.

### G.  Time Limitations

No compelling time limitations forced plaintiffs' attorneys dramatically to increase allocation of lawyer resources to this case.

### H.  Amount Involved and Results Obtained

This factor bears critical import with respect to determining "reasonable attorney's fees" under the civil rights statutes. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983). Plaintiffs began the case seeking well over $1.2 million in damages, in addition to injunctive relief. The attorneys consistently disregarded this court's rulings on evidentiary matters throughout the trial, creating a situation where a new trial was necessary. Ultimately, plaintiffs prevailed through settlement, and obtained approximately $250,000 in monetary damages and non-monetary relief in the way of changes to the sexual harassment policies and training of the Jackson Fire Department. The results obtained cannot be said to encompass all relief sought. Although it is not appropriate to award fees based on a percentage of monetary damages won through settlement, the magnitude of actual results compared to plaintiffs' desired results bears what an award of appropriate and reasonable attorney fees should be.

28

In this regard, the court awards no fees for time expended on unsuccessful post-trial motions and preparation for the second trial which never occurred. This court carefully reviewed the time sheets submitted and estimates that Ms. Elkin attributed 123.9 hours to work she did on post trial motions, and 131.5 hours preparing for the second trial. The court, therefore, excludes a total of 255.4 hours of Ms. Elkin's time expended on these efforts. Likewise, the court denies 121.1 hours Ms. Eardley designated in her time sheets as related to post-trial motions.

After deducting these specific hours, this court reduces the remaining hours to forty percent (40%) based on the actual success accomplished by the plaintiffs' in the litigation. In other words, this court reduces the hours by sixty percent (60%). Although the monetary award achieved totaled approximately $250,000, or only about 20% of the damages initially sought, the court reiterates that the results obtained must be viewed in their totality and not reduced simply on a percentage basis. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983).

### I. Experience, Reputation and Ability

This factor is addressed and taken into consideration in the hourly rates.

### J. Undesirability of the Case

This case certainly was not "undesirable." Multiple articulate, educated plaintiffs emerged with similar stories of mistreatment. They identified witnesses with varying degrees of knowledge. Other counsel found the case inviting. And, this case generated widespread publicity which had the potential to widen the acclaim of plaintiffs' attorneys. The court declines to use this factor to increase or decrease the lodestar in this case.

**K.  Nature and Length of Professional Relationship with the Client**

This factor is not applicable as this court knows of no relationship between the plaintiffs and attorneys prior to the litigation.

**L.  Awards in Similar Cases**

Similar to the customary fee, awards in other civil rights cases vary and are not factored into the award of fees in this case.

**V.  Expenses and Expert Witness Fees**

Plaintiffs have submitted voluminous pages of expense summaries, expense reports and receipts, including $104,984.68 for expert witness fees.

**A.  Expert Witness Fees**

The cornerstone Supreme Court cases regarding shifting of litigation costs were *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987) ("*Gibbons*"), and *W. Va. Univ. Hosp. V. Casey,* 499 U.S. 83 (1991) ("Casey").   Both cases explicitly stated that expert fees, in excess of those allowed by Title 28 U.S.C. § 1920 and Title 28 U.S.C. § 1821, may only be taxed to the losing party if the statute involved specifically allows it. The Court issued its *Casey* opinion on March 19, 1991 , addressing whether expert fees were included in the civil rights attorney fee shifting provision in Title 42 U.S.C. § 1988. At that time, section 1988 did not specifically reference expert witness fees, and stated in pertinent part:

> In any action or proceeding to enforce a provision of sections 1981, 1982,
>
> 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI
>
> of the Civil Rights Act of 1964, the court, in its discretion, may allow the

prevailing party, other than the United States, a reasonable attorney's fee

as part of the costs.

In *Casey*, because of the absence of specific language referencing expert fees,

the court addressed the question of whether "the phrase 'attorney's fees'" embraced

"fees for experts' services." 499 U.S. at 97. The Court compared the civil rights fee

shifting statute to a long list of other federal statutes which explicitly authorized taxation

of expert witness fees to the losing party. The Court concluded that if Congress had

intended a prevailing party to be able to tax expert fees, Congress would have included

explicit language in the civil rights statute as well.

In November of 1991, Congress responded to the *Casey* opinion by passing the

Civil Rights Act of 1991,[4] amending the attorney fee award provision to explicitly allow

for an award of expert fees. Currently, both Title VII[5] and Title 42 U.S.C. § 1988[6] cite

---

[4] PL 102–166, 1991 S 1745, SEC. 113. AUTHORIZING AWARD OF EXPERT FEES.
<< 42 USCA § 1988 >>
(a) REVISED STATUTES.—Section 722 of the Revised Statutes is amended—
(1) by designating the first and second sentences as subsections (a) and (b), respectively, and indenting accordingly; and
(2) by adding at the end the following new subsection:
"(c) In awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1977 or 1977A of the Revised Statutes, the court, in its discretion, may include expert fees as part of the attorney's fee.".

[5] Title 42 U.S.C. § 2000e-5(k) states:
In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

[6] Title 42 U.S.C. § 1988. Proceedings in vindication of civil rights
(c) Expert fees
In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.

31

expert fees in the statutes as taxable to the losing party.

Defendants cite the Fifth Circuit case *Int'l Woodworkers of America v. Champion Int'l Corp.*, to say that expert fees are not taxable in employment discrimination cases in excess of the daily fees paid to witnesses under Title 28 U.S.C. § 1821. 790 F.2d 1174 (5th Cir. 1986). Plaintiffs rightly cite the abrogation of this case for this proposition by the Civil Rights Act of 1991.

This is not to say that expert witness fees must be paid in all instances. The Supreme Court in *Casey* distinguished between experts who testify at trial and non-testimonial experts. 499 U.S. at 90. The Supreme Court cited a provision of the Criminal Justice Act of 1964, Title 18 U.S.C. § 3006A(e),[7] and the 1980 Equal Access to Justice Act, Title 28 U.S.C. § 2412(d)(2)(A)[8], as statutes which explicitly authorize

---

[7] Title 18 U.S.C. § 3006A(e) states in pertinent part:
(e) Services other than counsel.--
(1) Upon request.--Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate judge if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.
(2) Without prior request.--(A) Counsel appointed under this section may obtain, subject to later review, investigative, expert, and other services without prior authorization if necessary for adequate representation. Except as provided in subparagraph (B) of this paragraph, the total cost of services obtained without prior authorization may not exceed $800 and expenses reasonably incurred.
(B) The court, or the United States magistrate judge (if the services were rendered in a case disposed of entirely before the United States magistrate judge), may, in the interest of justice, and upon the finding that timely procurement of necessary services could not await prior authorization, approve payment for such services after they have been obtained, even if the cost of such services exceeds $800.

[8] Title 28 U.S.C. § 2412(d)(2)(A):
"fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees

non-testimonial expert fees.  These statutes specifically address "services necessary for adequate representation" or expenses "necessary for the preparation of the party's case." The Court states that this language expressly provides for non-testimonial expert fees for services rendered to prepare a party's case.

This court relies on the Supreme Court's reasoning in *Casey* to determine if expert fees are appropriate in this case. The language added by Congress to allow expert witness fees under 42 U.S.C. § 1988, mirrors the language referenced by the Court in *Casey* that referred to testimonial experts, and not those experts compensated for trial preparation. Plaintiffs employed two experts to testify at trial, Dr. Sharyn Lenhart and Dr. Bernice Sandler. Dr. Sandler testified about the City of Jackson's sexual harassment policies and their adequacy, and how specific facts and incidences alleged by plaintiffs related to the City's policies. Trial Transcript, Volume 6 at 720-799. Dr. Lenhart is a psychiatrist and testified about her evaluation of the plaintiffs and the impact the alleged sexual harassment by the City had on each of them. Trial Transcript, Volume 9 at 1305-1439. That trial, however, was voided in part because of the misconduct of plaintiffs' attorneys. This court treats this case as one which obtained results through settlement. Although the court has not excluded all attorney fees and costs expended in the first trial, the court in its discretion denies fees to these experts.

### B.  Travel Expenses

The court excluded all hours for the following attorneys: Kimberly Perkins, Deirdre Fitzpatrick, and Lauren Schwartzreich. This court denies a total of $2,399.75 in travel expenses supposedly incurred by these three attorneys. All hours for Heidi Burakiewicz after her involvement in the EEOC investigation were excluded.

33

Corresponding travel expenses, in the amount of $1,344.39, for Attorney Burakiewicz are also excluded. Finally, the fees for expert witness Dr. Sharyn Lenhart were excluded; so, the court also excludes her requested travel expenses in the amount of $525.60.[9]


### C. Mediation fees

Mediation fees of $1,600 are not taxable as expenses under Title VII and are thus excluded. *Mota v. University of Texas, Houston Health Science Center*, 261 F.3d 512, 530 (5th Cir. 2001).


### D. Copies

Plaintiffs submit 59 pages of what appear to be spreadsheets, interspersed with long columns of numbers and then 25 pages copy transaction reports in support of a request for $14,148.00 for in-house copies. The Fifth Circuit has interpreted the civil rights fee shifting statutes to allow "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the courts of providing legal services." *Mota*, 261 F.3d at 529. This court finds over $14,000 for in-house photocopies to be excessive. And the documentation provided to support these expenses is barely intelligible. Further, the affidavit provided by Jeanne Owen as to the expenses incurred does not address how these copies were used or why they were needed. Therefore, the court excludes these costs for in-house photocopying.

---

[9] For a summary of denied travel expenses including a listing of expenses requested by Attorneys Perkins, Fitzpatrick, and Schwartzreich, see Chart 3 in the Appendix to this Order.

### E.  Transcripts

The Fifth Circuit also allows "for the recover of '[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case.'" *Id*. Plaintiffs request $15,796.78 for transcripts, which includes $13,732 for deposition transcripts and $2,064.78 for trial transcripts. The court excludes the $2,064.86 expended for trial transcripts, obtained for preparation for the second trial.

### F.  Overnight Mail

The court denies $6,530.14 requested for overnight mail service paid to Federal Express and United Postal Service. Plaintiffs have also requested $269.98 in postage which is taxable to the losing party as part of the attorneys out-of-pocket expenses. But the plaintiffs have failed to articulate why it was necessary to expend many thousands of dollars on relatively expensive overnight mail delivery.

### G.  Process Servers

Plaintiffs have submitted 39 pages of invoices for process servers. All but four of these invoices include fees for "Rush" service. The total requested for process servers is $11,409.75. The Rush delivery fees are not clearly distinguished in the invoices from the normal delivery fees. Therefore the court applies a 25% reduction in the costs for process servers to account for an estimate of extra charges for rush service. This amounts to a deduction of $2852.44.  For a summary of all expenses excluded, see Chart 4 of the Appendix to this Order.

## VI. Conclusion

The Supreme Court has provided guidance, but no detailed mathematical formula to calculate reasonable attorney fees and costs in cases such as this. When plaintiffs achieve all of their litigation goals and obtain "excellent results," their attorneys "should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. With "partial or limited success," that full fee "may be an excessive amount." *Id* at 436. When "claims and legal theories are interrelated," such as those brought by plaintiffs in the case sub judice, the court cannot simply separate the "hours expended on a claim-by-claim basis" to arrive at the correct outcome. *Id* at 435.

The settlement further complicates the matter of fees. These plaintiffs prevailed through a court-sanctioned settlement, not by the actual jury trial, obscuring the issue of which claims were successful and which not. Under these circumstances, the Supreme Court exhorts the district court to focus on the "degree of success obtained" as the most critical factor," while rejecting "limiting attorney's fees in civil rights cases to a proportion of the damages awarded." *Hensley*, 461 U.S. at 435; *City of Riverside*, 477 U.S. at 562.

This litigation spanned six (6) years and multiple mediations, with plaintiffs seeking over $1.2 million in monetary damages, as well as, injunctive and declaratory relief against the City. Prior to trial, the City offered to settle the case for a total of $135,000 and offered to re-employ two of the three plaintiffs who had left the fire department. At trial, the jury awarded plaintiffs approximately $750,000 in monetary damages. After the court set aside the jury verdict, the parties settled for $249,986 in damages and certain requirements that the city alter its training and enforcement of

sexual harassment policies. The settlement did not provide for the re-employment of plaintiffs Tiffany Alexander and Stacy Prophet, which was part of the City's pre-trial settlement offer.

After extensive review of the statutory and case law and well over one-thousand pages of pleadings and exhibits, including the settlement agreement, trial transcript, expense reports, time sheets, and affidavits, this court has attempted to remain faithful to Supreme Court jurisprudence and view the litigation and results achieved as a whole. Plaintiffs consider the first trial necessary and provided leverage to force the City to increase its settlement offer. The trial provided sufficient leverage to raise the final settlement by $115,000, and afforded one plaintiff who continued employment with the fire department a presumably better working environment through training and policy changes. But-for the misconduct of the attorneys at trial and related error committed by the jury, plaintiffs may have recovered a much greater sum.

The trial provided no live witness testimony, evidence or other critical element to the mediator to further the settlement efforts. Any testimony that may have assisted the mediator or plaintiffs during settlement was available from the depositions taken in preparation for trial. Attorney hours and expenses related to these depositions were counted in the lodestar. The court also allowed a full $13,732 spent on deposition transcripts. This court finds that based on reductions for duplicative and excessive hours submitted and a careful analysis of the results achieved compared to the plaintiffs' objectives as articulated in the amended complaint and pre-trial order, the following award of attorney fees and costs is reasonable and appropriate:

37

Woodley & McGillivary

     Fees               $ 169,932.40
     Expenses          78,309.98

Louis H. Watson, Jr., P.A.

     Fees               $ 21,659.40

     Total              $ 263,901.78


     SO ORDERED, this the 21st day of March, 2011.


                            s/ HENRY T. WINGATE
                            UNITED STATES DISTRICT JUDGE


Civil Action No. 3:04-CV-614 HTW-LRA
Order

**Appendix**

**Chart 1: Hours and rates requested by plaintiffs[10]:**

|  | hours | rates | fees |
|---|---|---|---|
| Woodley, partner | 122.6 | 300 | 36,780.00 |
| Elkin, partner | 1015.9 | 300 | 304,770.00 |
| Burakiewicz, assoc. | 318.6 | 225 | 71,685.00 |
| Perkins, assoc. | 49.8 | 225 | 11,205.00 |
| Fitzpatrick, assoc. | 221.6 | 225 | 49,860.00 |
| Schwartzreich, assoc. | 174.9 | 225 | 39,352.50 |
| Eardley, assoc. | 1684.9 | 225 | 379,102.50 |
| Mechak, assoc. | 219.7 | 225 | 49,432.50 |
| Nickerson, paralegal | 7.5 | 100 | 750.00 |
| Rementer, paralegal | 20.7 | 100 | 2,070.00 |
| Loutoo, paralegal | 6.0 | 100 | 600.00 |
| **Total for Woodley & McGillvary** | | | **$ 945,607.50** |
|  |  |  |  |
| Watson, partner | 208.3 | 250 | 52,075.00 |
| Norris, assoc. | 118.9 | 200 | 23,780.00 |
| Thomas, paralegal | 10.5 | 100 | 1,050.00 |
| **Total for Louis H. Watson, Jr. P.A.** | | | **$ 76,905.00** |
|  |  |  |  |
| **TOTAL** | **4179.9** | | **$ 1,022,512.50** |

---

[10] There is a 2.4 hour discrepancy between plaintiffs' calculation of Ms. Elkins' total hours and this courts. For that reason, the amount cited in this opinion differs by $540 from the amount stated in plaintiffs' pleadings.

**Chart 2: Hours and rates awarded**

|  | hours | rates | fees |  |
|---|---|---|---|---|
| Woodley, partner | 62.8 | 250 |  | 15,700.00 |
| Elkin, partner | 680.9 | 250 |  | 170,225.00 |
| Burakiewicz, assoc. | 110.3 | 200 |  | 22,060.00 |
| Perkins, assoc. | 0.0 | 200 |  | - |
| Fitzpatrick, assoc. | 0.0 | 200 |  | - |
| Schwartzreich, assoc. | 0.0 | 200 |  | - |
| Eardley, assoc. | 948.8 | 200 |  | 189,766.00 |
| Mechak, assoc. | 43.3 | 200 |  | 8,660.00 |
| Nickerson, paralegal | 7.5 | 100 |  | 750.00 |
| Rementer, paralegal | 20.7 | 100 |  | 2,070.00 |
| Loutoo, paralegal | 6.0 | 100 |  | 600.00 |
| Total for Woodley & McGillvary |  |  | $ | 409,831.00 |
|  |  |  |  |  |
| Watson, partner | 145.8 | 250 |  | 36,452.50 |
| Norris, assoc. | 83.2 | 200 |  | 16,646.00 |
| Thomas, paralegal | 10.5 | 100 |  | 1,050.00 |
| Total for Louis H. Watson, P.A. |  |  | $ | 54,148.50 |
|  |  |  |  |  |
|  | 2119.9 |  | $ | 463,979.50 |
| **Total after reduction based on results** |  |  | **$** | **185,591.80** |

**Chart 3: Excluded travel expenses**

| | |
|---|---|
| Perkins | 1151.81 |
| Fitzpatrick | 631.86 |
| Schwartzreich | 616.08 |
| Burakiewicz - travel in 2006 | 1344.39 |
| Lenhart (expert) | 525.60 |
| Total | $ 4269.74 |

**Chart 4: Excluded expenses and costs**

| | |
|---|---|
| Total expenses requested | 214759.76 |
| | |
| Expert witness fees | 104984.68 |
| Travel expenses | 4269.74 |
| Mediation fees | 1600.00 |
| In-house photocopies | 14148.00 |
| Trial transcripts | 2064.78 |
| Overnight mail | 6530.14 |
| Process server rush fees | 2852.44 |
| Total Reductions | 136449.78 |
| | |
| Expenses allowed | $ 78309.98 |